IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SILVER BLACK,<br>             Plaintiff,<br><br>       v.<br><br>COMMUNITY EDUCATION CENTERS,<br>INC., also known as<br>"George W. Hill Correctional Facility" or<br>"Delaware County Prison,"<br>             Defendant. | CIVIL ACTION<br><br><br><br><br>NO.  13-6102 |

**DuBOIS, J.**                                                                                                      **March 4, 2014**

**M E M O R A N D U M**

### I.     INTRODUCTION

This is an employment discrimination case in which plaintiff, Silver Black, alleges that her former employer, Community Education Centers, Inc. ("CEC"), also known as George W. Hill Correctional Facility or Delaware County Prison, is liable for terminating her employment under a myriad of theories, including wrongful termination, breach of contract, negligent supervision, emotional distress, and discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*

Presently before the Court are Defendant CEC's Motion to Dismiss Plaintiff's Complaint and Defendant's Motion to Strike.  For the reasons set forth below, defendant's Motions are each granted in part and denied in part.

1

## II.     BACKGROUND[1]

Plaintiff is an African American female who worked for CEC as a prison corrections officer beginning on November 1, 2004.  Pl.'s Compl. ¶ 3.  On March 26, 2012, plaintiff was fired for being late to work.  *Id. ¶* 3.

In 2009, 2010, and 2012, plaintiff went on medical leave for a back condition and maternity leave.[2]  *Id.* ¶ 11.  Medical notes submitted to defendant pursuant to the Family and Medical Leave Act ("FMLA") stated that plaintiff would be late to work due to her ongoing conditions.  *Id.*

Corrections officers create a bottleneck as they pass through security when entering the prison at the start of a shift.  *Id.* ¶ 21.  African American officers caught in that bottleneck are written up for being late, whereas their white counterparts are not.  *Id.*  Furthermore, on occasion white supervisors improperly used their personal watches rather than the official prison clock in order to write up black officers for being late, even when that determination was unwarranted.  *Id.* ¶ 25.

Plaintiff was written up for being late to work three times, including two times during 2011 when she was under FMLA protection.  *Id.* ¶ 12.  When plaintiff informed the captain who had authorized those write ups that she was protected under the FMLA, the captain told her that the FMLA applies only when an individual is more than one hour late, not for periods of only fifteen minutes.  *Id.*

Plaintiff was employed pursuant to a collective bargaining agreement ("CBA").  Article 11 of that agreement, entitled "GRIEVANCE PROCEDURE AND ARBITRATION," states:

---

[1] The factual background is taken from plaintiff's Complaint and is set forth only to the extent necessary to address the questions before the Court.
[2] The Complaint lists the years of plaintiff's leave but does not specify the duration or dates of such leave.

> It is the specific intention of the parties that the grievance and arbitration procedures set forth herein are the exclusive and sole mechanism for the resolution of any grievances, disputes, disagreements or claims made under or related to this Agreement or arising from employment at the facility. In cases where a statutory, non-contractual right is at issue, this provision does not prevent an Officer from pursuing an action in a court of law after first utilizing the grievance procedures stated herein. However, an Officer may not obtain or enforce an award more than once nor pursue a court action if an adverse arbitration award is entered. This provision does not obligate the Union or the Officer to pursue arbitration if, after full consultation, either decides not to pursue arbitration.

Def.'s Mot. to Dismiss Pl.'s Compl. Ex. C at 12.

On April 27, 2012, plaintiff dual-filed a charge of discrimination with the EEOC and PHRC ("EEOC charge"), stating that she believed her termination was the result of discrimination based on her race, sex, and disability. EEOC Charge, Def.'s Mot. to Dismiss Pl.'s Compl. Ex. B. On September 17, 2013, plaintiff filed her Complaint in this Court, alleging twelve causes of action in twelve counts: (1) Wrongful Termination; (2) Breach of Contract; (3) Breach of the Duty of Good Faith and Fair Dealing; (4) Negligent Misrepresentation / Fraud; (5) Unjust Enrichment; (6) Negligence; (7) Gross Negligence; (8) Respondeat Superior; (9) Harassment; (10) Emotional Distress; (11) Discrimination; and (12) Negligence per se.

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  To satisfy the plausibility standard, a plaintiff's allegations must show that a defendant's liability is more than "a sheer possibility." *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV.    DISCUSSION

Defendant filed a Motion to Dismiss plaintiff's Complaint.  In that motion defendant included what is described as a Motion to Strike various paragraphs of plaintiff's Complaint under Federal Rule of Civil Procedure 12(f).  The Court addresses each motion in turn.

### 1.  Motion To Dismiss

Defendant argues plaintiff's Complaint should be dismissed in its entirety.  The Court will address plaintiff's contractual claims first, then her tort and statutory claims.

#### A.  Breach of Contract — Count II

Plaintiff alleges in Count II that defendant breached her CBA when it fired her.  Defendant argues that the arbitration clause in plaintiff's CBA bars plaintiff from bringing her breach-of-contract claim in a court of law.  The Court agrees with defendant.

Plaintiff argues the arbitration clause does not preclude her claim for four reasons.  First, plaintiff claims that her breach-of-contract claim must be brought in this action "lest [it] be waived by the split cause of action doctrine," which the Court construes as referring to the doctrine of claim preclusion.  Pl.'s Resp. 6.  This argument fails.  The doctrine of claim preclusion "disallows litigation of a matter that has never been litigated but which should have been presented in an

earlier suit." *Bierley v. Dombrowski*, 309 F. App'x 594, 597 (3d Cir. 2009). The doctrine does not apply in this case because plaintiff's breach-of-contract claim must be arbitrated pursuant to the arbitration clause in her CBA, and cannot be presented in this lawsuit. *See, e.g.*, *Schumacher v. Souderton Area Sch. Dist.,* No. 99-cv-1515, 2000 WL 72047, at *5 (E.D. Pa. Jan. 21, 2000) (dismissing contract claims under arbitration clause but not dismissing statutory claims).

Second, plaintiff argues the arbitration clause does not bar the filing of claims in court but, rather, is merely a bar on relitigating previously arbitrated claims. If an employee does not submit to arbitration, plaintiff argues, the arbitration clause is inapplicable. The Court rejects this argument.

The arbitration clause unambiguously states that "the grievance and arbitration procedures set forth herein are the *exclusive and sole mechanism* for the resolution of *any* grievances, disputes, disagreements or claims made under or related to this Agreement or arising from employment at the facility." Def.'s Mot. to Dismiss Pl.'s Compl. Ex. C at 12 (emphasis added). Plaintiff's interpretation of the arbitration clause is wholly contradicted by the CBA's unambiguous language, which plainly applies to all non-statutory, contractual grievances arising from her employment.[3]

Third, plaintiff argues that she did not knowingly waive her right to a judicial forum because the arbitration clause is inconspicuous. Pennsylvania law "favor[s][the] enforceability of agreements to arbitrate . . . . However, such agreements are upheld only where it is clear that the parties have agreed to arbitrate in [a] clear and unmistakable manner." *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007) (quoting *Quiles v. Fin. Exchange Co.*, 879 A.2d 281,

---

[3] Plaintiff also argues that the arbitration clause is unenforceable because it is ambiguous and therefore must be construed against the drafter, CEC. Because the Court concludes that the arbitration clause is not ambiguous, this argument fails.

5

287 (Pa. Super. 2005)).  Plaintiff contends that the CBA does not contain a clear agreement to arbitrate because the arbitration clause in the CBA was not written in a conspicuous manner, such as being written in a larger font or bold typeface.  The Court rejects this argument.

The Court concludes that the arbitration agreement in plaintiff's CBA is a "clear and unmistakable" agreement to arbitrate.  *Id.*  The clause is contained under the heading entitled "GRIEVANCE PROCEDURE AND ARBITRATION," written in capital letters.  The clause unambiguously states that "the grievance and arbitration procedures set forth herein are the *exclusive and sole mechanism* for the resolution of *any* grievances, disputes, disagreements or claims made under or related to this Agreement or arising from employment at the facility." Def.'s Mot. to Dismiss Pl.'s Compl. Ex. C at 12 (emphasis added).  Plaintiff's argument that the clause was inconspicuous fails because, "[u]nder Pennsylvania law, failure to read a contract does not excuse a party from being bound by its terms."[4]  *Schwartz*, 256 F. App'x at 520.

Finally, plaintiff argues that defendant is collaterally estopped from arguing that the arbitration clause applies because defendant raised a similar argument in its preliminary objections in a different case involving a different plaintiff in the Court of Common Pleas of Delaware County which was overruled.  *See* Order, *Bates v. Cmty. Educ. Ctrs., Inc.*, No. 12-cv-7631 (Ct. Com. Pl. Jan 10, 2013) (ECF No. 5).  The Court rejects this argument.  Under Pennsylvania law, the overruling of preliminary objections is not a judgment on the merits and therefore collateral

---

[4] To the extent plaintiff is arguing that the arbitration clause is unconscionable, that argument also fails.  *See, e.g.*, *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 182 (3d Cir. 1999) ("[I]n *McCullough v. Shearson Lehman Bros.*, Inc., 1988 WL 23008, at *3 (W.D. Pa. Feb.18, 1988), the District Court for Western District of Pennsylvania rejected an argument that an arbitration clause was unconscionable, where it was not printed more prominently than other parts of the contract."); *Aamco Transmissions, Inc. v. Harris*, No. 89-cv-5533, 1990 WL 83336, at *2 (E.D. Pa. June 18, 1990) ("[T]he print of the franchise agreement, while small, is uniform throughout. The placement of the clause, in the general section involving potential litigation, is logical and unsurprising.  In short, there is nothing about the jury waiver clause which serves to deemphasize its importance.").

estoppel is inapplicable.  *See Parking Auth. of the City of Wilkes-Barre v. Ten E. S. St. Co.*, 788 A.2d 1096, 1100 (Pa. Commw. Ct. 2001);  *Unified Sportsmen of Pa. v. Pa. Game Comm'n*, 950 A.2d 1120, 1129 (Pa. Commw. Ct. 2008) (finding issue preclusion may apply where a court sustains a demurrer).  In view of that determination, the Court need not address other legal issues relating to this part of the motion.

Accordingly, the Court concludes that plaintiff must arbitrate her breach-of-contract claim asserted in Count II pursuant to the arbitration clause of her CBA and dismisses that claim.

### B.  Breach of the Duty of Good Faith and Fair Dealing — Count III

The Court dismisses plaintiff's claim in Count III that defendant breached its duty of good faith and fair dealing.  Under Pennsylvania law, a breach of the implied covenant of good faith and fair dealing is a breach of contract action.  *See Temple Univ. Hosp., Inc. v. Grp. Health, Inc.*, No. 05-cv-102, 2006 WL 146426, at *6 (E.D. Pa. Jan. 12, 2006).  Accordingly, this claim must be arbitrated because it is not within the category of "statutory, non-contractual" claims which are excepted from arbitration.  Def.'s Mot. to Dismiss Pl.'s Compl. Ex. C at 12.

### C.  Wrongful Termination — Count I

Plaintiff's tort claim in Count I for wrongful termination also fails.  Under Pennsylvania law, "union employees subject to collective bargaining agreements may not pursue wrongful discharge claims against former employers."  *Coppola v. Jneso-Pocono Med. Ctr.*, 400 F. App'x 683, 684 (3d Cir. 2010).  In this case, plaintiff alleges that a collective bargaining agreement governed her employment.  Pl.'s Compl. ¶ 4.  Accordingly, this claim is dismissed.

### D.  Unjust Enrichment — Count V

Plaintiff's claim in Count V that defendant was unjustly enriched by her firing also fails. An unjust enrichment claim is barred where the parties' relationship is based on a written contract

unless there is a dispute as to the contract's validity. *See, e.g.*, *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, No. 11-3429, 2012 WL 262680, at *11 (E.D. Pa. Jan. 27, 2012). In this case, plaintiff was employed pursuant to a CBA, and the validity of that contract is undisputed.[5] Thus, the Court dismisses plaintiff's claim for unjust enrichment.

### E.  Negligence and Gross Negligence — Count VI and VII

Plaintiff alleges in Counts VI and VII that CEC breached its duty to supervise its employees when it "consciously disregarded the reported acts of discrimination." Pl.'s Compl. ¶ 129. The Court concludes that plaintiff's claims for negligence and gross negligence are preempted by the PHRA. "[I]t is firmly established that negligent supervision claims arising out of discrimination cases situated in the Commonwealth of Pennsylvania must be brought under the [PHRA]." *Randler v. Kountry Kraft Kitchens*, No. 11-cv-0474, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012). In this case, plaintiff's negligent-supervision claims arise out of her allegations of discrimination, and, thus, are preempted by the PHRA. *See, e.g.*, Pl.'s Compl. ¶¶ 54-56.

### F.  Negligence Per Se — Count XII

Plaintiff avers in Count XII that defendant's violations of Title VII and the PHRA amount to negligence per se. The Court rejects this argument because neither the PHRA nor Title VII provides a basis for such a claim. *See Maynard v. United States*, No. 06-cv-2331, 2008 WL 4453199 (M.D. Pa. Sept. 30, 2008) ("The PHRA . . . cannot serve as a basis for negligence per se under Pennsylvania tort law."); *Scarborough v. Brown Grp., Inc.*, 935 F. Supp. 954, 965 (W.D.

---

[5] Plaintiff, in her briefing on this issue, does not attack the validity of the CBA or argue that she is pleading her unjust enrichment claim in the alternative. Rather, she argues that "the mere fact that a contractual remedy might exist cannot defeat an equitable claim at this juncture; any contractual or legal remedies sought in this lawsuit must first be proven to be adequate and complete." Pl.'s Resp. 21.

Tenn. 1995) (finding Title VII is "not the type of law that the negligence *per se* doctrine was meant to encompass.").

    G.   **Emotional Distress — Count X**

Plaintiff claims in Count X — entitled "emotional distress" — that "[a]s a result of the negligent and intentional acts of defendant (including the termination itself), Officer Black has suffered injury in the form of emotional distress and anxiety." Pl.'s Compl. ¶ 138. The Court construes plaintiff's complaint as asserting claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").

Plaintiff's IIED claim fails. Plaintiff has not, in her Complaint or briefing, specified which "negligent and intentional acts" caused her emotional injury. Pl.'s Compl. ¶ 138. To the extent plaintiff is claiming her discriminatory treatment and termination are the basis of her emotional distress, plaintiff's allegations are insufficient to meet the outrageousness element of an IIED claim. *See, e.g.*, *Whitaker v. Firman*, No. 12-cv-224, 2013 WL 4498979, at *6 (W.D. Pa. Aug. 20, 2013) ("[D]istrict courts in this circuit have consistently held that alleged discrimination alone does not rise to the level of outrageousness necessary to establish IIED."). Plaintiff also alleges several egregious acts by prison guards towards prisoners and other guards. *See, e.g.*, Pl.'s Compl. ¶¶ 81, 86. To the extent plaintiff is claiming these acts caused her emotional distress, her claim also fails because, *inter alia*, she has not alleged that she was present to observe these events or that she was caused bodily harm as a result of her distress. *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000) (finding that, under the *Restatement (Second) of Torts* § 46(2), where outrageous conduct is directed at a third person who is not plaintiff's immediate family member, a plaintiff must be present at the time of the alleged misconduct and must also suffer bodily harm as a result of distress).

Plaintiff's NIED claim also fails.  In Pennsylvania, the tort of NIED is limited to situations in which: (1) the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.  *Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 217 (Pa. Super. Ct. 2012).  As to the first situation, not all contractual or fiduciary relationships suffice.  Only those relationships "involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach" and which "encompass an implied duty to care for the plaintiff's emotional well-being" may give rise to NIED liability.  *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95-96 (Pa. 2011).  In all situations, plaintiff's emotional distress must result in a physical manifestation.  *Greene v. City of Phil.*, No. 11-cv-5356, 2012 WL 4462635, at *3-4 (E.D. Pa. Sept. 26, 2012).

Plaintiff does not state the theory of negligent infliction of emotional distress under which she is proceeding.  In any event, she has failed to state a claim under any of the four above-stated situations in which such a claim may be asserted.  Plaintiff does not allege a physical manifestation of her distress.  Furthermore, the Court concludes that plaintiff's contractual relationship with CEC, as an employee in defendant's prison, is insufficient under Pennsylvania law to qualify as the type of "special relationship" that "encompass[es] an implied duty to care for the plaintiff's emotional well-being."  *Id.*  *Compare Grimaldi v. Bank of Am.*, No. 12-cv-2345, 2013 WL 1050549 (M.D. Pa. Mar. 14, 2013) (lender-borrower relationship is insufficient), *and Yarnall v. Philadelphia Sch. Dist.*, No. 11-cv-3130, 2013 WL 5525297 (E.D. Pa. Oct. 7, 2013) (employee-union relationship is insufficient), *with Madison v. Bethanna, Inc.*, No. 12-cv-1330, 2012 WL 1867459 (E.D. Pa. May 23, 2012) (adoption agency-adopting parent relationship is sufficient).  Accordingly, the Court dismisses plaintiff's NIED and IIED claims.

### H.  Negligent Misrepresentation / Fraud — Count IV

Plaintiff avers in Count IV that CEC (1) "negligently and/or fraudulently mischaracterized the circumstances leading to Officer Black's most recent termination," and (2) "negligently and/or fraudulently mischaracterized the scope of FMLA protection available to Officer Black."  Pl.'s Compl. ¶ 117.  Plaintiff's claims of misrepresentation and fraud fail because she does not allege the instances of mischaracterization with specificity and she does not allege that she relied on any such misrepresentations to her detriment.[6]  *See* Pl.'s Compl. ¶ 12; *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 277 (2005) (stating elements of negligent misrepresentation claim); *In re Lewis*, 478 B.R. 645, 661 (Bankr. E.D. Pa. 2012) (stating elements of fraud claim).

### I.  Discrimination — Count XI

Plaintiff alleges in Count XI that the treatment she received while she was employed at CEC and her eventual termination was the result of invidious discrimination in violation of Title VII and the PHRA.  Defendant did not address this claim in its briefing, and the Court concludes plaintiff has stated a claim of discrimination under Title VII and the PHRA.  Plaintiff alleges that she is an African American female, that she was qualified to do her job, that she has suffered an adverse employment action, and that the circumstances of her firing were suggestive of discrimination.  Specifically, she alleges that African American officers are written up for being late when white officers are not,  Pl.'s Compl. ¶ 21, and that white supervisors intentionally use their own watches rather than official prison time in order to falsely find African American

---

[6] Plaintiff's fraud claims must be plead with particularity in accordance with Federal Rule of Civil Procedure 9(b).  Although there is disagreement about whether plaintiff's negligent misrepresentation claims also fall under Rule 9(b), courts agree that such claims must be plead with "a degree of specificity."  *See Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-cv-3154, 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) (discussing pleading standard for negligent misrepresentation claims).

officers late, *id.* ¶ 25.  The Court concludes that these allegations state claims for discrimination under Title VII and the PHRA.  *See Coleman v. Blockbuster, Inc.*, 352 F. App'x 676, 680 (3d Cir. 2009) (elements of Title VII claim); *Weston v. Pennsylvania*, 251 F.3d 420, 426 n.3 (3d Cir. 2001) (elements of PHRA claim).

### J.  Harassment — Count IX

Plaintiff claims in Count IX that "[b]y engaging in a pattern of discriminatory and abusive behavior the Employer has harassed Officer Black."  Pl.'s Compl. ¶ 135.  Plaintiff does not identify the legal theory under which she brings that claim.  In plaintiff's briefing she identifies a criminal statute, "contractual harassment," and harassment under Title VII and the PHRA.  Pl.'s Resp. 22.  Incredibly, the case plaintiff cites in support of her claim for "contractual harassment" holds that such a claim is preempted by the PHRA under facts similar to those presented in this case.  *See King v. M.R. Brown, Inc.*, 911 F. Supp. 161, 168 (E.D. Pa. 1995) ("The PHRA also preempts common law claims for breach of contract when the only act that would support the common law claim is the act of discrimination.").

Properly construed as a claim under the PHRA and Title VII, plaintiff's claim of harassment must be dismissed because it is not within the scope of her EEOC charge.  Plaintiff's EEOC charge consists of three sentences and mentions only that she was terminated for tardiness even though other white, male officers who are frequently late were not terminated.  Def.'s Mot. to Dismiss Pl.'s Compl. Ex. B.  Because her EEOC complaint says nothing about harassment, that claim has not been exhausted and must be dismissed.  *Cf. Wright v. Philadelphia Gas Works*, No. 01-cv-2655, 2001 WL 1169108, at * 3 (E.D. Pa. Oct. 2, 2001) ("Since the EEOC charge is devoid of all claims except racially motivated discharge, the Title VII claims of hostile work environment and retaliation are dismissed with prejudice.").  This dismissal is without prejudice to plaintiff's

right to file an amended complaint if she is able to exhaust her administrative remedies with respect to this claim.

### K. Respondeat Superior — Count VIII

Plaintiff alleges in Count VIII that "Defendant is liable under the doctrine of Respondeat Superior for the actions of its employees." Pl.'s Compl. ¶ 133. Defendant argues this claim must be dismissed because respondeat superior is not an independent cause of action in Pennsylvania. Defendant is correct that under Pennsylvania law "there is no separate cause of action for respondeat superior liability." *Olschefski v. Red Lion Area Sch. Dist.*, No. 12-cv-871, 2012 WL 6003620 (M.D. Pa. Nov. 30, 2012). To the extent plaintiff is attempting to assert an independent cause of action for respondeat superior, that claim is dismissed. However, plaintiff may rely upon the doctrine of respondeat superior to impute liability to CEC for the actions of its employees under Title VII and the PHRA. *See Delazaro v. Lehigh Univ.*, CIV.A. 98-CV-432, 1999 WL 54566, at *4 (E.D. Pa. Jan. 29, 1999) ("[I]n Title VII cases arising from the actions of a supervisor, respondeat superior liability may be appropriate . . . where an employee suffers a tangible employment action, such as discharge.") (internal quotation marks omitted).

### 2. Motion to Strike

Defendant also argues that various paragraphs of plaintiff's Complaint should be stricken under Federal Rule of Civil Procedure 12(f). Rule 12(f) provides, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Natale v. Winthrop Res. Corp.*, No. 07–4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (internal quotation marks omitted). Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations "have no possible relation to

the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.* (internal quotation marks omitted).

Defendant asks the Court to strike paragraphs 14-61 and 63-95 of plaintiff's Complaint. The Court grants the motion to strike as to some of the statements included in paragraphs 38 and 40. Specifically, plaintiff's allegation, in paragraph 38, that "That tormented officer ultimately killed his wife," is stricken because it has "no possible relation to the controversy" and "confuse[s] the issues in the case." *Id.* Furthermore, plaintiff's allegation, in paragraph 40, that "his wife might well be alive today," is stricken for the same reasons.

Defendant's Motion to Strike is denied in all other respects.

## V. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendant's Motion to Dismiss plaintiff's Complaint.

The Court's dismissal of Counts I, II, III, V, VI, VII, VIII, and XII is with prejudice. The Court's dismissal of Counts IV and X is without prejudice to plaintiff's right to file, within 20 days, an amended complaint if warranted by the facts and applicable law. The Court's dismissal of Count IX is without prejudice to plaintiff's right to file an amended complaint if she is able to exhaust her administrative remedies with respect to this claim. What remains in the case is plaintiff's claim of discrimination under Title VII and the PHRA in Count XI.

The Court also grants in part and denies in part defendants Motion to Strike.

An appropriate order follows.